IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LARRY BRYANT** *et al*, | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. RDB-21-2008 |
| v. | * | |
| **KOPPERS, INC.,** *et al*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Larry Bryant and Deidra Bryant (collectively, "Plaintiffs") bring this products liability action on their own behalf and, as a putative class action, on behalf of others similarly situated against Defendants Koppers, Inc., Culpeper of Federalsburg, LLC, Culpeper of Columbia, Inc., Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC (collectively, "all Defendants"), seeking monetary relief for damage to a wooden deck affixed to their home. (Amended Complaint, ECF No. 19.) Presently pending are Defendant Koppers, Inc.'s, Motion to Dismiss (ECF No. 33), Defendants Culpeper of Federalsburg, LLC, Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC's collective Motion to Dismiss (ECF No. 34), and Defendant Culpeper of Columbia, Inc.'s, Motion to Dismiss (ECF No. 35). The Court has reviewed the relevant filings (ECF Nos. 39, 40, 41, 45, 46, 47) and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Defendants' Motions (ECF Nos. 33, 34, 35) shall be GRANTED, and Plaintiffs' Amended Complaint (ECF No. 19) shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiffs' Amended Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). On June 27, 2007, Plaintiffs contracted with ProBuilt Construction, Inc. ("ProBuilt")[1] to build a deck affixed to their home in Crownsville, Maryland. (Amended Complaint, ECF No. 19 at 7.) Defendants Culpeper of Federalsburg, LLC, Culpeper of Columbia, Inc., Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC (collectively, "Culpeper Defendants") design, manufacture, treat, and sell pressure-treated lumber, which was used in the construction of Plaintiffs' deck. (Amended Complaint, ECF No. 19 at 7, 17.) Defendant Koppers, Inc. ("Koppers"), supplies chemicals used to treat chemically-treated wood, presumably for the type of wood used in the construction of Plaintiffs' deck. *Id.*

Plaintiffs' deck was built in September 2009 for $145,096.00, accounting for the cost of design, materials, and labor. (Amended Complaint, ECF No. 19 at 7.) Plaintiffs' deck was constructed eight to ten feet tall with pressured-treated wood that "was treated by Culpeper Defendants with chemicals manufactured by Koppers in order to preserve the wood from rot, mold, fungi, and the like." *Id.* Ten years after construction, at some point in 2019, Plaintiff Deidra Bryant fell on her deck when a support beam "gave way." *Id.* Ms. Bryant did not suffer major injuries. *Id.*

After Ms. Bryant's fall, Plaintiffs inspected the deck and observed wood joists rotting, decaying, and caving. (Amended Complaint, ECF No. 19 at 8.) As a result, the wood joists did not fully support the deck boards and caused "a major structural safety hazard." *Id.* The

---

[1] ProBuilt is not a named Defendant in this case.

rotting and decay in various joists were only visible upon removal of the deck boards. *Id.* Once the deck boards were removed, Plaintiffs observed that the deck stairs stringer was also extensively decayed. *Id.* at 12. Plaintiffs attribute the deck's deteriorated condition to a fungus "which rots wood from the inside out, and causes a visible white residue on the wood." (Amended Complaint, ECF No. 19 at 15.) Plaintiffs allege that their deck is no longer structurally sound for use and there is "imminent danger of collapse" thereby creating an extreme safety hazard. *Id.* at 16.

Plaintiffs filed suit on August 9, 2021, some two years after Mrs. Bryant's fall, against Defendant Koppers, Inc., and Defendant Culpeper of Federalsburg, LLC. (ECF No. 1.) Koppers and Culpeper of Federalsburg filed motions to dismiss (ECF Nos. 5, 6), to which Plaintiffs responded in opposition (ECF Nos. 20, 21) and simultaneously filed an Amended Complaint (ECF No. 19) on November 1, 2021. Plaintiffs' Amended Complaint added Defendants Culpeper of Columbia, Inc., Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC, and asserts that "[i]f the wood used to construct the deck had been properly treated by Culpeper Defendants with an appropriate chemical manufactured by Koppers, then the fungus would not have formed on the deck and the deck would be fit for normal use." (Amended Complaint, ECF No. 19 at 16.) Plaintiffs' Amended Complaint seeks relief against all Defendants based on four counts: negligence (Count I); strict products liability (Count II); unfair or deceptive trade practices (Count III), and; breach of warranty (Count IV). (Amended Complaint, ECF No. 19.) All Defendants filed respective Motions to Dismiss (ECF Nos. 33, 34, 35).

Defendant Koppers' Motion to Dismiss argues that Counts I and II are barred by Maryland's *economic loss doctrine*, Count III does not meet the standard of particularity for fraud allegations, and Count IV fails to state a claim upon which relief may be granted. (ECF No. 33-1 at 7.) Defendants Culpeper of Federalsburg, LLC, Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC's collective Motion to Dismiss (ECF No. 34-1) iterates the same arguments as detailed in Koppers' Motion (ECF No. 33-1). Defendant Culpeper of Columbia, Inc.'s ("Culpeper of Columbia") Motion to Dismiss (ECF No. 35-1) argues foremost that this Court lacks personal jurisdiction, but also that Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted. For the reasons explained below, Defendant Koppers' Motion to Dismiss (ECF No. 33) is GRANTED, Defendants Culpeper of Federalsburg, LLC, Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC's collective Motion to Dismiss (ECF No. 34) is GRANTED, and Defendant Culpeper of Columbia, Inc.'s Motion to Dismiss (ECF No. 35) is GRANTED. Accordingly, Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE.

## STANDARD OF REVIEW

Defendant Culpeper of Columbia's Motion to Dismiss (ECF No. 35) argues this Court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) to adjudicate Plaintiffs' claims against it. The remaining Defendants seeks dismissal under the Federal Rule of Civil Procedure 12(b)(6) standard. Each standard is explained below.

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.)*

4

*Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## I. Motion to Dismiss Pursuant to Rule 12(b)(2)

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 489 (D. Md. 2014). While a court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F.Supp.3d at 489.

If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make "a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "a threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary

5

hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## II. Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

If fraud is alleged, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." A plaintiff "must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation, and what he obtained thereby.'" *Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019). "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud." *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

## ANALYSIS

Plaintiffs' Amended Complaint must be dismissed as to Defendant Culpeper of Columbia because it fails to present a prima facie case of personal jurisdiction. Plaintiffs' Amended Complaint must also be dismissed as to Defendants Koppers, Inc., Culpeper of Federalsburg, LLC, Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC for failure to state a claim upon which relief may be granted. The Court's rationale is explained in turn.

### I. Culpeper of Columbia

Plaintiffs have failed to demonstrate that this Court has personal jurisdiction over Defendant Culpeper of Columbia which is alleged to be a Virginia corporation with its principal place of business in South Carolina. (ECF No. 19 at 4.) Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule

7

4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *Sigala*, 145 F. Supp. at 489. To satisfy the first prong, a plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citation omitted).

Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

A court may exercise two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). General jurisdiction arises from a defendant's continuous and systematic contacts in the forum state. *Id.* On the other hand, specific jurisdiction arises when there is an "affiliation between

the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278.

"The purposeful availment requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, fortuitous, or attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Ryan v. TEV Corp.*, ELH-18-3852, 2019 WL 5683400, at *5 (D. Md. Nov. 1, 2019) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985)). The United States Court of Appeals for the Fourth Circuit has identified several nonexclusive factors courts may consider to determine whether a defendant has purposefully availed itself to the forum state. *Consulting Engineers*, 561 F.3d at 278. For example, in the business context, purposeful availment may be inferred by the obligation to perform contractual duties in the forum state. *Consulting Engineers*, 561 F.3d at 278 (citing *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982)). It may also be found where the defendant "reached into the forum state to solicit or initiate business." *Consulting Engineers*, 561 F.3d at 278 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 221 (1957); *Burger King*, 471 U.S. at 475-76.

Plaintiffs have not provided any basis for this Court to exercise general jurisdiction over Culpeper of Columbia. Plaintiffs' Amended Complaint states that Culpeper of Columbia "is a corporation duly organized under the laws of Virginia with its principal place of business

in Columbia, South Carolina." (ECF No. 19 at 4.) Plaintiffs generally note that "[o]n information and belief, Culpeper [of Columbia] is a seller of Koppers-treated wood products and does business in Maryland." *Id.* Despite this broad and non-specific statement, as Defendant Culpeper of Columbia highlights, Plaintiffs have failed to show that Culpeper of Columbia maintains continuous and systematic contacts in the State of Maryland. Instead, Plaintiffs have submitted that "[a]s a result of Culpeper counsel's flat-out refusal to cooperate with Plaintiffs' counsel in good faith, Plaintiffs sued various Culpeper entities it has reason to believe are connected to Plaintiffs' claim and subject to personal jurisdiction in Maryland." (ECF No. 41-1 at 2.) Plaintiffs' retort falls short of rendering Culpeper of Columbia susceptible to this Court's general jurisdiction.

Plaintiffs have also failed to make a *prima facie* showing that Culpeper of Columbia is amenable to this Court's specific jurisdiction. As mentioned above, Plaintiffs provide no details or facts about Culpeper of Columbia's relationship, if any, to the State of Maryland. Instead, Culpeper of Columbia asserts that it "has never supplied lumber to a dealer in Maryland and does not generally supply anything into Maryland" such that "the lumber used in the construction of Plaintiffs' deck would not have come from" Culpeper of Columbia's plant in South Carolina. (ECF No. 45 at 2.) Without any showing from Plaintiffs, this Court is left with little to analyze and the Amended Complaint reads like an attempt to subject Defendant to suit "solely as a result of 'random, fortuitous, or attenuated' contacts." *Rudzewicz*, 471 U.S. at 475. As a result, this Court lacks personal jurisdiction over Defendant Culpeper of Columbia, and its Motion to Dismiss (ECF No. 35) is GRANTED. The Court additionally notes that, even if this Court exercised personal jurisdiction over Defendant Culpeper of

10

Columbia, Plaintiffs' claims nonetheless are DISMISSED WITH PREJUDICE for the reasons explained below as to the other Defendants. Specifically, there is simply no plausible claim for relief stated against it.

## II. Koppers and Culpeper Defendants

Defendant Koppers' Motion to Dismiss (ECF No.33) and the remaining Culpeper Defendants' Motion to Dismiss (ECF No. 34) present virtually the same arguments in support of dismissal. Consequently, this Court will analyze those arguments and Plaintiffs' corresponding responses together, and if necessary will note where the arguments differ. As explained below, those Motions (ECF Nos. 33, 34) will be GRANTED.

### a. Counts I and II (Negligence and Strict Liability)

Plaintiffs' claims of negligence and strict liability are barred by the economic loss rule under Maryland law. Maryland courts categorize "losses in products liability claims as either (1) personal injuries, (2) physical harm to property other than the product itself, or (3) economic loss suffered when the product fails to meet the contractual expectations of the purchaser." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995). Under the economic loss rule, plaintiffs generally may not recover for purely economic losses. *Id.* (citing *U.S. Gypsum v. Baltimore*, 647 A.2d 405 (Md. 1994)). Economic losses "are often the result of some breach of contract and ordinarily should be recovered in contract actions." *Id.* Although the economic loss rule precludes tort claims for purely economic losses, if such losses "are coupled with a *serious* risk of death or personal injury resulting from a dangerous condition" courts will "allow recovery in tort to encourage correction of the dangerous condition." *Morris*, 667 A.2d at 632 (emphasis in original).

Defendants argue that Plaintiffs seek relief on these tort claims for purely economic loss which is barred from recovery under the *economic loss rule*. (ECF Nos. 33, 34.) Defendants additionally contend that the public safety exception to the economic loss rule is inapplicable because there was no serious risk of death or personal injury. *Id.* Indeed, the Amended Complaint in this case does not claim any serious injury to Mrs. Bryant as the result of her fall in 2019. Nevertheless, Plaintiffs argue two alternative grounds: (1) the wood itself is damaged, which in turn damaged the remainder of the deck, thereby constituting "physical harm to property other than the product itself" and (2) even if the wood and deck are viewed as one piece of property and its damage is categorized as purely economic loss, the public safety exception to the economic loss rule applies. (ECF Nos. 39, 40.)

Plaintiffs' attempt to differentiate between the damage done to the wood which comprises the deck and the damage to the deck as a whole is unconvincing. *See Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1004 (Md. App. 2007), *aff'd*, 942 A.2d 722 (Md. 2008) ("[o]nce installed, the system could not readily be separated from the underlying structure"). Where a "component part" becomes damaged and is part of an "integrated whole", the damage is a "harm to a product itself." *Id.* (quoting Restatement (Third) of the Law of Torts, Products Liability § 21 cmt. e, at 296). Thus, where the wood used to construct a deck becomes damaged, the damage is done to the deck itself. As Defendant Koppers contends, "[t]he law will not draw some philosophical distinction between the wood in a deck and the deck itself." (ECF No. 33-1 at 12.) Consequently, Plaintiffs seek relief for damage done to the product itself, which is barred by the economic loss rule.

Plaintiffs' alternative argument similarly fails, and the exception to the economic loss rule does not apply. Even accepting the facts alleged as true, Plaintiffs' Amended Complaint merely recites the legal conclusion that the deck may cause serious risk of personal injury. Without more, this "threadbare recital" of the exception to the economic loss rule does not meet the Federal Rule of Civil Procedure 12(b)(6) pleading standard. "[M]ere possibilities are legally insufficient to allege the existence of a clear danger of death or *serious* personal injury." *Morris*, 667 A.2d at 633 (emphasis in original). Plaintiffs urge that facts are analogous to *Whiting-Turner*, and therefore the risk of harm exception should apply. *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336 (Md. 1986). The defendant in *Whiting–Turner* created a substantial risk of death to multiple residents in a twenty-one story residential building it had constructed because it did not adhere to fire codes. *Id.* at 338-39. Here, there is no indication that safety codes have been disregarded or that the risk of potential injury is so severe that the public safety exception should apply. *See Pelino v. Ward Mfg., LLC*, No. CIV.A. RDB-14-02771, 2015 WL 4528141, at *6 (D. Md. July 27, 2015) ("The risk of harm is therefore insufficient to trigger the public safety rule."). Because Plaintiffs' Counts I and II are barred by the economic loss doctrine, Defendants' Motions (ECF Nos. 33, 34) are GRANTED and Counts I and II are DISMISSED WITH PREJUDICE.

### b. Count III (Unfair or Deceptive Trade Practices)

Plaintiffs assert that Defendants' "representation that its product would not be impacted by fungal decay was a false or misleading written statement, visual description, or other representation" under Maryland Consumer Protection Act, Md. Code, Commercial Law § 13-303, as defined by § 13-301(1). (ECF No. 19.) The Maryland Consumer Protection Act

13

("MCPA") prohibits "unfair, abusive, or deceptive trade practice" in the sale or offer for sale "of consumer goods, consumer realty, or consumer services." § 13-303. A private party bringing a claim under the MCPA must allege '(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 710 (D. Md. 2020) (quoting *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D. Md. 2012)). "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013).

"The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000). Importantly, "[f]raud-based claims under the MCPA are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard" and "must at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Washington Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 710 (D. Md. 2020) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)) (internal quotations omitted).

Plaintiffs have failed to satisfy the heightened pleading standard necessary for an allegation of fraud under the Maryland Consumer Protection Act. Defendant Koppers aptly notes that "the Amended Complaint is devoid of allegations as to the time, place or other circumstances of the allegedly false representation." (ECF No. 33-1 at 19.) Instead, Plaintiffs provide Culpeper Defendants' website URL and allege that Defendants "falsely represented

14

to consumers before that the wood they treated and the chemicals they supplied for this treatment would be 'protected from . . . fungal decay.'" (ECF No. 19 at 19.) Plaintiffs do not detail when this representation was made or by whom. Additionally concerning, "Plaintiffs never allege that Defendants made these representations to them, or that they were even aware of the existence of the brochure when they signed their contract with ProBuilt in 2007." (ECF No. 34-1 at 15.) Given the timeframe of the contract between ProBuilt and when the deck was built, it is simply conjecture that this representation was even made between 2007-2009.

Plaintiffs concede that their claim does not meet the heightened pleading standard, but argue that their MCPA claim is not fraud-based and therefore the heightened pleading standard is inapplicable. (ECF No. 39-1 at 7.) Instead, Plaintiffs' opposition attempts to distinguish their claim from fraud and emphasizes Defendants' false, deceptive, and misleading statements. *Id.* This Court has held similar allegations to be rooted in fraud. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009) ("The complaint alleges that 'the false statements, deceptive actions, misrepresentations, omissions, and other acts described in this complaint deceived and tended to deceive Plaintiffs in violation of MCPA.'…This claim sounds in fraud, and is subject to the heightened pleading requirements of Rule 9(b)."); *see also Palermino v. Ocwen Loan Servicing, LLC*, No. CV TDC-14-0522, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (applying heightened standard where plaintiff alleged defendant "violated the MCPA by making various false and misleading statements during the process of reinstating and modifying her mortgage").

The Maryland Court of Special Appeals has made a distinction between those claims under the MCPA that replicate common-law fraud and those that do not. *McCormick v.*

15

*Medtronic, Inc.*, 101 A.3d 467, 493 (Md. App. 2014). In differentiating those claims, the court found that where a party alleges unfair and deceptive trade practice under § 13-301(9), such a claim replicates common-law fraud. *Id.* Conversely, where a party alleges violation under § 13-303, "a party can allege an 'unfair and deceptive trade practice' without replicating a claim for common-law fraud" thereby obviating the need to heightened pleading at the dismissal stage. *Id.*

Because Plaintiffs have argued that their Amended Complaint does not allege fraud, the Court will discuss how their claim fails nonetheless under Federal Rule of Civil Procedure 8 for completeness. *Botts v. Johns Hopkins Univ.*, No. CV ELH-20-1335, 2021 WL 1561520, at *20 (D. Md. Apr. 21, 2021) ("The parties argue over whether plaintiff's MCPA claims are subject to the heightened pleading standard under Fed. R. Civ. P. Rule 9(b)… But, this disagreement is irrelevant because plaintiff fails to satisfy even the minimum pleading standard under Rule 8."). Plaintiffs contend "[b]y representing pre-purchase that its product was pressure-treated and would not be impacted by fungal decay, Defendants' representation substantially induced Plaintiffs' choice of pressure-treated lumber for their deck and was false or misleading." (ECF No. 19 at 19.) The Amended Complaint fails to provide more than recitation of the elements of a claim under MCPA.

As explained above, Plaintiffs' Amended Complaint provides a URL link to a brochure on Culpeper Defendants' website. There is no plausible claim that Plaintiffs relied on this brochure, as the publication (2009) postdates the contract with ProBuilt (2007). There is simply no basis for the allegation that Plaintiffs were induced by such information, as required in proving the element of reliance. Even viewing the alleged facts as true, "the deceptive trade

practice must occur in the sale or offer for sale to the consumer." *Morris*, 667 A.2d at 635.  As Defendants aptly note, "[t]he mere possible existence of the brochure (whether on paper or online) at the time Plaintiffs contracted for the construction of their deck is insufficient to allege a representation made in the course of a consumer transaction—much less reliance." (ECF No. 46 at 14.)  Plaintiffs contracted with ProBuilt – neither Defendant Koppers nor the Culpepper Defendants transacted or played any role in the sale, and an exception to that rule does not apply here.  *See Morris*, 667 A.2d at 636 ("The only effect the alleged misrepresentations had on the sale of the townhouses was the creation of a possibly erroneous belief on the part of the builders which caused them to include allegedly inferior products in the townhouse. This remote effect on the sale of consumer realty is not sufficient for us to conclude that the deceptive trade practice actually occurred in that sale.")

Accordingly, Plaintiffs' MCPA claim in its Amended Complaint fails to state a claim upon which relief may be granted.  Therefore, Defendants' Motions (ECF Nos. 33, 34) are GRANTED and Count III is DISMISSED WITH PREJUDICE.

c. **Count IV (Breach of Warranty)**

Plaintiffs' Amended Complaint alleges that Defendants breached "warranties" in that the "product was not of good and merchantable quality, was not suitable for performing the function for which it was intended, and was not properly designed, manufactured, inspected, or tested."  (ECF No. 19 at 20.)  Plaintiffs' oppositions clarify that it seeks recovery under an implied warranty of merchantability. (ECF Nos. 39-1, 40-1.)  Under Md. Code Ann., Com. Law § 2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  A "buyer" of "goods" is

afforded the protections of implied warrant of merchantability. A "buyer" is "a person who buys or contracts to buy goods." Under Md. Code Ann., Comm. Law § 2-103. "Goods" are all things "which are movable at the time of identification to the contract for sale." Md. Code Ann., Comm. Law § 2-105(1).

Here, Plaintiffs are not "buyers" of "goods." Instead, Plaintiffs are "buyers" of a deck through a contract with ProBuilt. ProBuilt, in turn, "bought" the wood.[2] Although Plaintiffs contend that they bought the lumber necessary for building the deck, as Defendants emphasize, "[n]owhere in the Amended Complaint do Plaintiffs allege that they contracted with ProBuilt for the purchase of lumber, nor that they even discussed the terms of that purchase with ProBuilt. Moreover, they specifically allege that they paid ProBuilt only after the deck was fully constructed." (ECF No. 46 at 11.)  In other words, "at most, Plaintiffs allege that the price ProBuilt ultimately billed them for the deck encompassed all of *ProBuilt's* costs in constructing the deck, including but not limited to materials."  (ECF No. 46 at 11) (emphasis in original); *see also Morris*, 667 A.2d at 637 (finding that plywood used to build home was no longer good once affixed to the home and as a result the "only contracts for the sale of goods occurred between the defendants and the builders"). Therefore, Plaintiffs are not buyers of a "good" as the wood became affixed to the home as part of the deck, and Plaintiffs contracted and paid for construction of a deck, which is not "moveable." Accordingly, Plaintiffs' implied breach of warranty claim in its Amended Complaint fails to state a claim

---

[2] It is worth noting that the Amended Complaint does not provide a chain of transaction and it is conjecture that ProBuilt even purchased the wood directly from any Culpeper entity.

18

upon which relief may be granted. Therefore, Defendants' Motions (ECF Nos. 33, 34) are GRANTED and Count IV is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, this Court lacks personal jurisdiction over Defendant Culpeper of Columbia and its Motion to Dismiss (ECF No. 35) is GRANTED. Because Plaintiffs have failed to state any claim upon which relief may be granted, Defendant Koppers, Inc.'s, Motion to Dismiss (ECF No. 33) is GRANTED and Defendants Culpeper of Federalsburg, LLC, Culpeper of Fredericksburg, Inc., and Culpeper of Fruitland, LLC's collective Motion to Dismiss (ECF No. 34) is GRANTED. Therefore, Plaintiffs' Amended Complaint (ECF No. 19) is DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: September 12, 2022                          _____/s/_____
                                                   Richard D. Bennett
                                                   United States District Judge